# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,** | : | **CIVIL ACTION** |
| **Secretary of Labor, United** | : | |
| **States Department of Labor** | : | **NO. 16-1390** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LAS MARGARITAS, INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    DECEMBER 27, 2018

## MEMORANDUM OPINION[1]

**INTRODUCTION**

This matter was filed pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"). Based upon the evidence presented at the non-jury trial and stipulated to, the following pertinent facts are undisputed: Victor and Vittoria Perez own and operate Las Margaritas, Inc., which does business as a Mexican restaurant named Las Margaritas, in Philadelphia, Pennsylvania. Las Margaritas, Inc., a corporation, is a covered enterprise engaged in commerce or in the production of goods for commerce under the FLSA. *Id.* at § 3(s)(1)(A). Victor Perez, as the President and employer, is responsible for the overall management of the restaurant and the business operations, *inter alia,* labor practices, hiring and firing workers, and compensation policies. Victor's brother, Felipe Perez, is the restaurant's General Manager, responsible for implementing business operational decisions and policies/practices, including running the day-to-day business, setting the work schedule, and supervising employees.

---

[1]     As required by Federal Rule of Civil Procedure 52(a), this Memorandum Opinion sets forth the Court's findings of fact and conclusions of law.

On March 25, 2016, the Secretary of Labor ("Plaintiff"), as the head of the United States Department of Labor ("DOL"),[2] filed a complaint on behalf of nine allegedly aggrieved employees against Defendants Victor Perez, Felipe Perez, and Las Margaritas, Inc. (collectively, "Defendants"),[3] alleging that Defendants had willfully violated the minimum wage, overtime, and record keeping provisions of the FLSA.[4] Plaintiff seeks back wages for the unpaid minimum wage and overtime compensation allegedly due the nine employees/servers of Las Margaritas; an equal amount of liquidated damages for each of these individuals based on the alleged willfulness of Defendants in violating the FLSA; and a permanent injunction against Defendants enjoining them from future violations of the minimum wage, overtime, and record keeping provisions of the FLSA.

A five-day non-jury trial was held between May 18, 2018 and May 24, 2018. Thereafter, the parties filed their respective proposed findings of fact and conclusions of law, post-trial briefs, and replies.[5]

## BACKGROUND

Attached as Schedule A to the complaint, Plaintiff listed the names of the servers who were purportedly underpaid and for whom back wages were sought; *to wit*: Edwin Alvarez, Sandra

---

[2] When the complaint was filed, Thomas Perez was the Secretary of Labor. The current Secretary of Labor is R. Alexander Acosta.

[3] Although Vittoria Perez is not a defendant in this action, she is responsible for the general business accounting, including providing employee hours worked to a payroll company for employee checks.

[4] The DOL commenced an on-site investigation of the restaurant on February 27, 2013, had an Initial Conference with Defendants on March 22, 2013, exchanged some email communications with Defendants that ended in April 2013, and held a Final Conference with Defendants on February 11, 2015, where the DOL presented a $4.3 million demand for back wages and liquidated damages.

[5] *See* ECF 119, 120, 123, 125, 129, 132.

Calvillo, Monica Dickens,[6] Roberto Gonzalez, Esmirna Samayoa, Mike Sierota,[7] Arturo Betancourt, Nelson Gonzalez, and Andrea Hernandez. (ECF 1 at 8). At the start of the non-jury trial, the parties submitted to the Court *Joint Stipulations*, (marked as Court Exhibit 1), in which Defendants agreed, *inter alia*, that they had failed to keep sufficient records of hours worked and tips claimed during the period of December 22, 2012 through April 25, 2013 (the "Agreed-Upon Period"), (Joint Stip. at ¶ 22); that during the Agreed-Upon Period, Defendants had not properly paid seven servers for all hours worked, including overtime, and improperly deducted money from those seven servers as part of an invalid tip pool, (*id.* at ¶ 23); and that Defendants owed those seven servers back wages for the Agreed-Upon Period for minimum wage, overtime, and repayment of improper deductions for a tip pool. (*Id.* at ¶ 25).[8]

In the Joint Stipulations, Defendants made clear that they did not agree with the method Plaintiff used to calculate the back wages or that the violations committed were "willful," as defined in the FLSA. (*Id.* at ¶ 26). However, during opening statements at trial counsel for Defendants conceded, for the first time, that Defendants' violations of the FLSA during the Agreed-Upon Period were willful and, thus, Defendants were liable for liquidated damages in an amount equal to their liability for back wages owed for the Agreed-Upon Period. (Trial Tr. I at 56:18-23).[9] After numerous calculations and in light of Defendants' concession, this Court accepts

---

[6]     In the complaint, this employee's name appears as "Vivianna 'Monica' Calvillo."

[7]     In the complaint, this employee's name appears as "Mike Sieroca."

[8]     The parties stipulated that Mike Sierota and Monica Dickens began working at Las Margaritas after the Agreed-Upon Period, (Joint Stip. at ¶ 24), and, therefore, are not part of any compensation deemed due for the Agreed-Upon Period.

[9]     The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 . . . shall be liable to the employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). These liquidated damages are compensatory rather than punitive in nature; they compensate employees for

the parties' submission; will incorporate the Joint Stipulations as part of its findings of fact; grants judgment to the named servers accordingly; and finds, pursuant to § 216(b) of the FLSA, that the total amount of damages assessed against Defendants for the Agreed-Upon Period (December 22, 2012 through April 25, 2013) is $124,197.24.[10]

Plaintiff also claims that Defendants committed additional violations of the FLSA after the Agreed-Upon Period and seeks additional damages on behalf of the nine servers listed in the complaint for the continual alleged violations. Based on the evidence of record, this Court makes the following additional preliminary findings of fact:[11]

> On February 27, 2013, DOL investigator Jennifer Azeles ("Azeles") visited Las Margaritas, spoke with Felipe Perez, and informed him that the DOL was investigating Las Margaritas' payment practices to its employees. Azeles collected some information and documentation from Perez, took notes on the surroundings and the number of employees working, and left. Plaintiff contends that much of the information Felipe Perez provided was inaccurate or false.

---

the losses they may have suffered by reason of not receiving their proper wages at the time they were due. *Martin v. Selker Bros., Inc.*, 949 F. 2d 1286, 1299 (3rd Cir. 1991).

[10]     During the litigation, there has been much debate over the amount of damages owed for the Agreed-Upon Period. At trial, the Court was provided with a document titled "DOL's Back Wage Calculations for Stipulated Periods of Violations," dated May 18, 2018, which broke down the back wages due for each of the seven servers during the Agreed-Upon Period, and calculated the total, including liquidated damages, as $126,012.24. Throughout the trial, Defendants indicated that they stipulated to that amount. (*See, e.g.*, Trial Tr. I at 56:11-21; Trial Tr. IV at 129:19-23). However, on the last day of trial, Defendants advised the Court that they had discovered mistakes in Plaintiff's calculations and argued that the total amount of damages owed for the Agreed-Upon Period should be $124,197.24, based upon revisions to the DOL's back wages calculations dated May 24, 2018. Plaintiff maintained that the previously-stipulated amount of damages owed was correct. However, in Plaintiff's later post-trial filings, Plaintiff stipulated to Defendants' revised total amount of damages of $124,197.24. (ECF 123 at 28). Nonetheless, in Defendants' post-trial filings, Defendants assert that the amount of damages owed is less and totals $122,438.46, yet provide no explanation for the new calculations. (ECF 125 at 41-42). Given this disagreement and protracted calculations, this Court finds that the total amount of damages owed for the Agreed-Upon Period is $124,197.24.

[11]     At trial, Plaintiff called as witnesses the following individuals: Las Margaritas servers Nelson Gonzalez and Esmirna Samayoa; Vittoria Perez; and DOL investigator Jennifer Azeles. Defendants called the following witnesses: Felipe and Victor Perez; Las Margaritas server Mike Sierota; and DOL employees Rowena Luk and Ivette Vigano. Additionally, the deposition testimonies of Las Margaritas servers Edwin Alvarez, Sandra Calvillo, Monica Dickens, and Roberto Gonzalez were admitted into evidence.

On March 22, 2013, Azeles returned to Las Margaritas and met with Victor and Vittoria Perez (the "Initial Conference"). Azeles informed the Perezes that they were violating the FLSA's requirements regarding their payment practices to the employees (hours worked and wages paid) and record keeping, and that they needed to correct these violations. From this meeting, Vittoria Perez understood that Azeles would help Las Margaritas come into compliance with the FLSA, and cooperated with Azeles by providing some information requested and permitting Azeles interviews with the employees.

Consistent with Plaintiff's directives, Defendants instituted the following changes; *to wit*: Servers were required to punch in and out of work. Servers were paid $2.83 an hour, up to forty hours per week, and $4.25 an hour for each hour in excess of forty hours. At the end of their shifts, servers printed out their sales report, and then calculated twelve percent of their total sales, which they reported to Defendants as an estimate of the tips they had earned for the shift. Servers also calculated 3-4% of their total sales (depending on the shift), which amount they gave to the manager for the stated purpose of the manager pooling that money, in order to tip out the busboys and food runners. Defendants held a staff meeting in late March 2013, during which the servers were informed of these changes. Victor Perez gave the servers a document entitled, "Notice to Tipped Employees Memorandum," which explained the changes. Though the Notice is written in English, during the meeting Victor explained its contents to the employees in Spanish. Defendants also hung posters in the restaurant that Azeles had given them, which were written in both English and Spanish and discussed the minimum wage and overtime requirements.

With the exceptions of some email communications, the next time Azeles contacted Defendants was in 2015, when she scheduled a meeting with them for early February 2015 (the "Final Conference"). At that meeting, Azeles informed Defendants that they were not in compliance with the FLSA, and that they owed $4.3 million dollars in back wages and liquidated damages to eighteen servers. Thereafter, Defendants retained counsel who provided Azeles with additional information, including payroll and pay procedure documentation from the prior two years. Based on this documentation, Plaintiff significantly reduced the back wages demand, but the parties were unable to agree on the total amount owed.

## DISCUSSION

Plaintiff argues that Defendants continued to willfully violate numerous provisions of the FLSA after the Agreed-Upon Period and are, therefore, liable for back wages and liquidated damages owed to the nine servers. Based upon the evidence of record and for the reasons that follow, this Court finds that although Defendants did continue to violate the record-keeping

provisions of the FLSA, Defendants did not violate the minimum wage and overtime requirements of the FLSA.

## I.     <u>Record Keeping</u>

The FLSA is a federal remedial labor statute that creates the right to a minimum wage and overtime pay when people work over forty hours a week. This statute applies to employees engaged in interstate commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce. The parties stipulated that the FLSA is applicable. Section 211(c) of the FLSA requires employers to keep records of, *inter alia*, the wages, hours, and other conditions and practices of employment of its employees. 29 U.S.C. § 211(c). The FLSA makes it unlawful to violate the record-keeping requirements, *id.* at § 215(a)(5), and provides injunctive relief as the remedy for violations of these record-keeping requirements. *Id.* at § 217.

In addition, § 203(m) of the FLSA permits employers to take what is known as a "tip credit," and pay tipped employees a wage below the minimum wage if, *inter alia*, the wage the tipped employees are paid plus the tips they receive add up to at least the minimum wage. *Id.* at § 203(m). The pertinent regulation requires employers claiming a tip credit to keep records documenting the "[w]eekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070)." *See* 29 C.F.R. § 516.28(a)(2).[12]

Plaintiff contends that Defendants continued to violate the FLSA's record-keeping provisions by failing to keep records of the actual tips the servers received. Defendants dispute

---

[12]     Judicial notice is taken of IRS Form 4070, which requires employees to separately list their cash and credit/debit card tips.

this argument and contend that they satisfied the relevant requirements by attributing twelve percent of each server's gross sales to that server as a proxy for the tips received.

### A. Findings of Fact with Respect to Record Keeping

The facts on this issue are undisputed. Witnesses testified at trial and in depositions that Defendants instructed the servers to calculate twelve percent of their gross sales at the end of each shift, and then to report that figure to Defendants as tips received. Every two weeks, those reported amounts were added up, and the servers signed a form indicating that the tip totals were accurate. In actuality, however, these totals represented twelve percent of each server's total sales for that two-week period and not necessarily the monetary value of tips they actually received. Defendants admitted that they did not record the cash tips that the servers pocketed at the end of each shift, and instead strictly relied on the twelve percent of the gross sales.

### B. Conclusion of Law with Respect to Record Keeping

Defendants cite no authority, and this Court is unaware of any, establishing that an employer may comply with the tip record keeping requirements of § 516.28(a)(2) by directing its employees to report, as tips received, a set percentage of the gross sales. Here, the servers testified that the daily number of tips earned varied based on the day, shift, and customer. Defendants assert that most servers would report very little, if any, of their cash tips, and that twelve percent of gross sales would easily cover the servers' tips on any given shift. Defendants further assert that such a practice, in this context, satisfies § 516.28(a)(2). Defendants are mistaken. The language of § 516.28(a)(2) is clear and requires employers claiming a tip credit to keep records documenting the "[w]eekly or monthly amount reported by the employee, to the employer, of tips received." Defendants have not complied with this requirement.

Based on these facts, this Court concludes that, following the Agreed-Upon Period, Defendants continued to violate the strict record-keeping requirements of § 211(c) of the FLSA. Accordingly, injunctive relief is ordered pursuant to 29 U.S.C. § 217. Defendants are enjoined from future violations and must comply with the proper record-keeping requirements under FLSA.

## II.   <u>Minimum Wage and Overtime</u>

The FLSA requires employers to pay their employees an hourly minimum wage of $7.25. 29 U.S.C. § 206(a). However, for tipped employees, employers may pay a lower hourly wage and claim a tip credit to cover the balance between the wage the employer pays and the minimum wage ($7.25), if certain criteria are met. *Id.* at § 203(m). That is, an employer may claim a tip credit when: (1) the employee earns tips equaling at least the tip credit amount; (2) the employee retains all tips he or she collects; and (3) the employer informs the employee that a tip credit is being claimed and the amount of the credit. *See id.*; 29 C.F.R. § 531.59(b); *Calabrese v. TGI Friday's Inc.*, 2017 WL 5010030, at *4 (E.D. Pa. Nov. 2, 2017) (citing *Mackereth v. Kooma, Inc.*, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015)). Further, employers must pay employees who work more than forty hours per week "at a rate not less than one and one-half times the regular rate at which [they] [are] employed." 29 U.S.C. § 207(a)(1). The current required overtime wage for minimum wage employees is $10.875.

Plaintiff contends that Defendants violated the FLSA's minimum wage requirements by (1) failing to pay the nine servers the federal minimum hourly wage of $7.25, and overtime wage of $10.875, after consideration of their actual tips; (2) deducting money from the servers' daily tips to be distributed to other restaurant staff through an invalid tip pool; and (3) failing to provide sufficient notice to the servers that Defendants would be claiming a "tip credit," rather than directly

paying servers the federally required minimum hourly wage.  Finally, throughout its briefs, Plaintiff argues that Defendants bear the burden of proof of establishing compliance.

## 1.      Sufficiency of Tips

In *Anderson v. Mt. Clemens Pottery*, the Supreme Court instructed federal courts to calculate wages in the absence of employer records as follows:

> [I]n such a situation [where the employer's records are inadequate], an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

328 U.S. 680, 687-88 (1946).  Absent adequate employer records pertaining to employee wages and hours, as required by the FLSA, "the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work, but rather to allow the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred."  *Martin v. Selker Bros., Inc.*, 949 F. 2d 1286, 1299 (3rd Cir. 1991) (citing *Mt. Clemens*, 328 U.S. at 687).  Accordingly, here, where the employer has provided inadequate records, the DOL bears the initial burden of submitting sufficient evidence from which it may be reasonably inferred that the servers for whom relief is claimed were not properly compensated.  This Court will address the parties' arguments under this burden-shifting framework.

Plaintiff contends that Defendants failed to demonstrate that the nine servers received sufficient tips to earn the federal minimum hourly wage of $7.25.  Defendants, however, refute Plaintiff's contention and argue that Plaintiff failed to meet its burden of proof because it did not

provide a single witness to support that, after the Agreed-Upon period, any of the nine servers failed to collect enough tips to earn the minimum wage.

### A.     Findings of Fact with Respect to Sufficiency of Tips

It is undisputed that following the Agreed-Upon Period, Defendants began paying each of the nine servers $2.83 per hour. Thus, at issue is whether those servers made at least $4.42 per hour in tips, which, combined with the $2.83 hourly wage, would bring them up to the federal minimum hourly wage of $7.25.

Generally, under the FLSA, an employee (or the DOL on the employee's behalf) must prove by a preponderance of the evidence that he was not properly compensated for hours worked. *See Mt. Clemens*, 328 U.S. 680 at 686-87; *see also Bettger v. Crossmark, Inc.*, 2014 WL 2738536, at *6 (M.D. Pa. June 17, 2014). As outlined above, however, where a plaintiff alleges minimum wage and overtime pay violations under the FLSA, and the employer does not have adequate records, the plaintiff bears the initial burden of submitting sufficient evidence from which it may be reasonably inferred that he (the employee) performed work for which he was not adequately compensated. *See Mt. Clemens*, 328 U.S. at 687; *Selker Bros.*, 949 F.2d at 1297; *Acosta v. Central Laundry, Inc.*, 2018 WL 1726613, at *2 (E.D. Pa. Apr. 10, 2018). Here, this Court finds that Plaintiff did not produce evidence from which it could be reasonably inferred that any of the nine servers performed work for which they were not properly compensated.[13] To the contrary, the testimony presented by the servers who testified at trial, or whose depositions were offered into evidence, convincingly shows that they were compensated above the minimum wage for the work they performed.

---

[13]     The Court is referring to the period after the Agreed-Upon Period.

The evidence offered at trial established that for a 40-hour work week,[14] Defendants directly paid servers $113.20.[15] In order to earn the minimum wage of $7.25 per hour, each server needed to collect an additional $4.42 per hour in tips, or $176.80, over the course of the week.[16] Several of the servers approximated the generally-collected tips for various shifts as follows: Edwin Alvarez testified in his deposition that he made between $100 and $110 in tips for weekday dinner shifts, $50 for weekday lunch shifts, and $70 for Friday and Saturday lunch shifts. (Alvarez Depo. at 46, 49, 50). Sandra Calvillo testified in her deposition that she would make anywhere from $50 to $100 dollars in tips for lunch shifts, depending on the day; $100 for weekday dinner shifts; and $150 for Friday or Saturday dinner shifts. (Calvillo Depo. at 104-05). Roberto Gonzalez testified in his deposition that on a slow lunch shift he would make between $45 and $60 in tips, and that for a slow dinner shift he would make between $60 and $80 in tips. (R. Gonzalez Depo at. 55). Nelson Gonzalez testified at trial that, prior to the DOL investigation, when he was working well in excess of forty hours per week, he earned between $650 and $700 per week in tips. (Trial Tr. I at 72).[17] He also testified in his deposition that he earned less in tips following the DOL investigation because he worked fewer hours. (N. Gonzalez Depo. at 65). Mike Sierota testified in his deposition that he would make between $200 and $220 in tips for weekend dinner shifts, $30 in tips for weekday lunch shifts, and $100 in tips for weekday dinner shifts. (Sierota Depo. at 77-78).

---

[14] The servers generally testified to working 40-hour work weeks after the Agreed-Upon Period.

[15] 40 x $2.83 = $113.20.

[16] 40 x $4.42 = $176.80.

[17] At his deposition, he testified that he earned between $700 and $900 per week in tips during the DOL investigation.

Notably, in closing arguments, Plaintiff highlighted Sierota's testimony regarding weekday lunch shifts as follows:

> Former server, Mike Sierota, testified on slow days that he only received $30 in tips. So who's at fault here? Certainly for the defendants who claim they are entitled to pay $2.83 an hour at all costs because they think it's fair. They don't get to make that call.

Trial Tr. V at 188:6-11. For context, the Court notes other servers' testimony that the lunch shift was five hours long. (*See, e.g.*, Alvarez Depo. at 46:4-17). If Sierota made $30 in tips for a five-hour lunch shift, he would earn, in combination with his $2.83 hourly wage, $44.15 for the shift. If he were instead paid the minimum wage of $7.25 for a five-hour shift, he would earn only $36.25. Even if lunch shifts were 6 hours long, Sierota would have earned more by collecting $30 in tips and being paid $2.83 per hour (*i.e.*, $46.98) than he would have if he were just paid $7.25 per hour (*i.e.*, $43.50). Thus, the evidence Plaintiff highlighted to establish that the servers were not properly compensated for the hours worked served the opposite purpose: it clearly established that the servers *were* adequately compensated.

Plaintiff argues that some servers testified to, at times, being directed by Defendants to clock out and continue working. However, the Court finds that the instances cited to by Plaintiff occurred during the Agreed-Upon Period. Further, the servers identified by Plaintiff clarified that after the Agreed-Upon Period they did not punch out and continue working. (*See, e.g.*, Trial Tr. I at 116:10-14 (N. Gonzalez) ("Q. Sure. So after the DOL came in you understood that to be the policy of Las Margaritas, that no one was to punch out and continue to work? A. Yes, yes of course, but that was afterwards, and then I didn't do it again, obviously."); R. Gonzalez Depo. at 5:4-6 ("Q. Mr. Gonzalez, when did you stop working at Las Margaritas? A. May 3rd, 2013."); Alvarez Depo. at 53:8-11 ("Q. If I were to represent to you that the change, in fact, occurred in March [2013], would you have any reason to dispute that? A. No.")).

In light of this evidence and the testimony of servers that they generally worked forty or less hours per week after the Agreed-Upon Period, the Court finds that the servers earned at least $7.25 per hour for working up to forty hours a week, and earned at least $10.875 per hour for the overtime hours they worked.[18]

### B. Conclusion of Law with Respect to Sufficiency of Tips

Considering these findings of fact, this Court concludes that Plaintiff failed to submit sufficient evidence from which violations of 29 U.S.C. §§ 203(m), 206(a), and 207(a)(1) could be reasonably inferred.

### 2. Tip Pool

Next, Plaintiff argues that Defendants violated the minimum wage requirements of the FLSA by way of an invalid tip pool, which required servers to pay into a tip pool for other restaurant staff, but not all of the money the servers paid into the pool was distributed to the staff. As noted, if an employer claims a tip credit, the FLSA generally requires employees to retain all tips they collect. However, this requirement does "not prohibit the pooling of tips among employees who customarily receive tips." 29 U.S.C. § 203(m)(2). Here, it is undisputed that Defendants required the servers to give Defendants 3-4% of their gross daily sales (depending on the server's shift) for the stated purpose of Defendants pooling the money and distributing the tip money to busboys and food runners. Plaintiff argues that Las Margaritas' tip pool was not valid because Defendants did not give some or all of the money collected from the servers to the busboys and food runners. Plaintiff is mistaken.

---

[18] Plaintiff additionally cites a redacted sworn statement which Plaintiff attributes to Edwin Alvarez, stating that he and other servers worked more than forty hours per week without extra compensation after the Agreed-Upon Period. However, given that this statement is generally inconsistent with aspects of Alvarez's deposition testimony, and with other servers' testimony, this Court does not find Alvarez' statement, which was not subjected to cross examination, credible.

Courts have held that a restaurant "ha[s] the burden to prove it operated a legal tip pool." *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (quoting *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011)). Based on the credible testimony of Felipe Perez, the Court finds that Defendants instituted a tip pool in which the servers gave the manager on duty three or four percent of their total sales for use in the tip pool based on the hours worked, which the manager would later distribute among the busboys and food runners.

Plaintiff urges, however, a different finding and relies on: (1) issues present in Defendants' records from the February 9 to February 22, 2015 pay period; (2) inconsistencies or errors in other records; and (3) the fact that servers and Vittoria Perez were unable to testify to having personal knowledge that Felipe gave the tip pool money to the busboys/food runners. This Court finds these illustrations unpersuasive.

### A.        Findings of Fact with Respect to Tip Pool

Up until the February 2015 Final Conference with Azeles, Defendants paid the busboys and food runners $7.25 an hour and did not record the tips they were given from the tip pool. After that meeting, Defendants started paying the busboys and food runners $2.83 an hour, believing that the tips they received from the tip pool would bring their earnings up to and above the minimum wage of $7.25 per hour. The first pay period during which Defendants paid the busboys and food runners $2.83 per hour was the period of February 9 to February 22, 2015. At trial, it was established that in a typical two-week pay period, Felipe recorded the hours worked by servers, busboys, food runners, kitchen staff, and hosts on a sheet known in this litigation as "Felipe's Grid." He also recorded the tips collected by the servers. Felipe would meet with Vittoria once each pay period and provide her the numbers from his grid. On another document, Vittoria would record, based on what Felipe told her, the hours worked for each employee in one column, and the

tips collected by the servers in another column ("Vittoria's Notes"). Vittoria would then call the company that processed payroll for Las Margaritas and relay the figures from her Notes. Up until the February 9 to February 22, 2015 pay period, Felipe had not recorded the tips the busboys/food runners received on his Grid, and Vittoria had not filled the tips in on her Notes. Felipe's Grid for the February 9 to February 22, 2015 pay period includes tips for the busboys/food runners. Vitorria's Notes for that pay period do as well. The tip totals for the servers are the same between Felipe's Grid and Vittoria's Notes for that pay period. However, the tip totals for busboys/food runners on Vittoria's Notes for that pay period (*i.e.*, the number Felipe told her to write in) did not match up with the tip totals from Felipe's Grid. The tip totals in Vittoria's Notes were higher. For example, a busboy named Miguel is listed on Felipe's Grid as receiving $480 in tips for the pay period but is listed in Vittoria's Notes as receiving $558.25. The tip totals for the busboys/food runners reflected in the payroll records produced by Defendants' payroll company for this pay period match the higher numbers from Vittoria's Notes. Notably, the tip totals listed in Vittoria's notes and on the payroll records, equal exactly $7.25 multiplied by the number of hours worked by the busboy or food runner.

At trial and in post-trial filings, Plaintiff makes much of the discrepancies highlighted for the February 9 to February 22, 2015 pay period. Plaintiff appears to assume that the tip totals listed in Vittoria's Notes and in the payroll records—*i.e.*, $7.25 multiplied by hours worked—are the amount of tips Defendants collected from the servers for the tip pool, and that the tip totals listed on Felipe's Grid are the amounts that were distributed to the busboys/food runners. Under this assumption, in its brief, Plaintiff cites to the February 9 to February 2, 2015 pay period to argue that "Defendants' own records show that not all tips they collected for this alleged tip pool were actually distributed to the bussers and food-runners." (Pl's Br. (ECF 123) at 14). Yet, in the

very next sentence, Plaintiff reasonably questions the accuracy of the tip totals from Vittoria's Notes for this pay period, when arguing, "[f]urther, when Defendant Felipe Perez and Vittoria Perez met for their biweekly payroll meetings, they over-reported tip amounts for bussers and food-runners to their payroll provider to make it appear that these employees made *exactly* $7.25 per hour in tips." (*Id.*) Plaintiff thus simultaneously argues (1) the fact that the tip totals in Vittoria's Notes were larger than the tip totals on Felipe's Grid for this solitary pay period proves that Defendants withheld money from the tip pool, *and* (2) the fact that the tip total in Vittoria's Notes from this solitary pay period equaled $7.25 multiplied by hours worked proves that the tip totals in Vittoria's Notes are not accurate.

This Court finds no basis or reason to conclude from this record that the tip totals reported in Felipe's Grid for the February 9 to February 2, 2015 pay period were not the tip totals paid to the busboys/food runners. The tip totals listed in Vittoria's Notes, and on the corresponding payroll, appear to indicate nothing more nefarious than an accurate listing of totals each busboy/food runner would need to make (when their hourly wage of $2.83 and their collected tips were combined) in order for them to earn the $7.25 minimum wage. Indeed, when the hours worked for this pay period are multiplied by $2.83, and then combined with the tip totals from Felipe's Grid, each busboy/food runner earned more than $7.25 per hour. This fact, of course, has no bearing on this case, as the busboys/food runners are not the employees Plaintiff claims were underpaid.[19] The only relevant issue for this case is whether the tip pool to which Defendants

---

[19] The Court does note that Defendants appeared to overreport the busboy/food runners earnings for payroll purposes for this pay period, as the payroll listed the totals from Vittoria's Notes, *plus* $2.83 per hour worked. Again, however, that fact, which was an apparent miscommunication between Felipe and Vittoria, has no bearing on the case at hand.

required the servers to contribute tips was valid, and nothing from the February 9 to February 22, 2015 pay period or Plaintiff's argument indicates that it was not.

Further, neither the minor inconsistencies in the math from Defendants' records during other pay periods, nor the fact that the servers and Vittoria lacked personal knowledge of Felipe distributing money from the tip pool to the busboys/food runners, persuades this Court that Felipe's testimony was not credible. This Court finds that Defendants routinely and appropriately distributed the money collected for the tip pool to the busboys and food runners.

**B.     Conclusion of Law with Respect to Tip Pool**

Pursuant to these findings of fact, this Court concludes that Defendants met their burden of proof that they did not violate 29 U.S.C. § 206(a) and 29 U.S.C. § 203(m) by way of an invalid tip pool.

**3.     Notice of Tip Credit**

Lastly, Plaintiff argues that Defendants violated the minimum wage requirements of the FLSA by claiming a tip credit without informing the employees that a tip credit was being claimed and the amount of the credit. The relevant regulations provide guidance as to the notice which an employer must provide employees when the employer intends to claim a tip credit:

> [A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, *i.e.*: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

In *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit held that "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage[.]"  The court in *Chez Robert* also noted that "[t]he notice requirement is a firm one," and quoted the First Circuit to underscore the importance of the notice requirement:

> "It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced the requirement . . . . If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide."

*Id.* (quoting *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (alteration in original)).

However, courts have uniformly held that—as stated in 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b)—employers are required only to *inform* employees of their intention to take the tip credit, not to *explain* the tip credit.  *Chez Robert*, 28 F.3d at 403 ("Section 3(m) therefore allows an employer to reduce a tipped employee's wage below the statutory minimum by an amount to be made up in tips, but only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision") (citing *Tango's Restaurant*, 969 F.2d at 1322-23 ("We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. It could easily be read to require more—for example, notice of 'the amount . . . determined by the employer' to constitute wages—but how much more need not be decided in this case.") (alteration in original)); *see also Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998)

("As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily "explain" the tip credit as argued by the plaintiffs. The statute requires that the employee be "informed" of the tip credit. As the magistrate judge concluded, "inform" requires less from an employer than the word "explain" would.").

### A.    Findings of Fact with Respect to Notice of Tip Credit

Here, this Court finds that the servers were informed that Defendants were claiming a tip credit against their wages and were informed of the content required, and in a manner consistent with the dictates of 29 C.F.R. § 531.59(b). Trial testimony acknowledged that Defendants held a meeting with their employees in late March 2013, at which time Victor explained in Spanish, *inter alia*, that servers would be paid $2.83 per hour and $4.25 per hour of overtime, and earn the difference of minimum wage through collecting tips, which would be reported as twelve percent of their sales; that the employees needed to punch in and out at the start and end of work shifts, and breaks; and that the servers would be contributing around four percent of their sales each shift to a tip pool to be distributed by the manager to the busboys/food runners. This information was also provided in a letter to the employees titled "Notice to Tipped Employees," which was written in English. Victor Perez explained the contents of the letter to the employees in Spanish at the meeting, and gave them copies.[20]   Victor Perez, Felipe Perez, Nelson Gonzalez, and Esmirna

---

[20]    Plaintiff contends that this exhibit (Defendants' Exhibit 27) was not admitted into evidence. At the close of trial, Defendants moved to admit it into evidence, along with several other exhibits. The Court then heard Plaintiff's objections. Plaintiff did not object to the admission of Defendants' Exhibit 27 into evidence. After hearing Plaintiff's objections, the Court, in ruling on which exhibits would be admitted into evidence, inadvertently did not state that Defendants' Exhibit 27 was admitted into evidence. In any event, its relevant contents were provided via testimony, and were offered for the non-hearsay purpose of establishing that the servers were informed of the necessary components of the tip credit.

Samayoa all testified at trial that this meeting occurred, though Gonzalez and Samayoa recalled other details. (*See* Trial Tr. I at 97:18-21 (N. Gonzalez); Trial Tr. II at 73:11-16, 86-88 (Samayoa); Trial Tr. IV at 93 (F. Perez); Trial Tr. V at 13-16 (V. Perez)). Mike Sierota also testified that he was given the Notice to Tipped Employees when he was hired. Additionally, it was undisputed that Defendants hung posters provided by the DOL in the restaurant, which were written in English and Spanish, and discussed minimum wage and overtime requirements.[21] Based upon this credible evidence of record, the Court finds that Defendants complied with the notice requirement.

### B. Conclusion of Law with Respect to Notice of Tip Credit

Pursuant to these findings of fact, this Court concludes that Defendants showed they did not violate the tip credit notice requirements of 29 U.S.C. § 206(a), 29 U.S.C. § 203(m), or 29 C.F.R. § 531.59(b).

**CONCLUSION**

Therefore, summarizing this Court's findings of fact and conclusions of law, pursuant to the Joint Stipulations herein incorporated, Defendants, during the period of December 22, 2012 through April 25, 2013 (the Agreed-Upon Period), violated the FLSA's minimum wage, overtime and record keeping provisions and, further, those violations were willful, as defined in the FLSA. Judgment is hereby entered in favor of Plaintiff in the amount of $124,197.24, on behalf of the following individuals, in the amounts noted:

---

[21] The DOL posters were not admitted into evidence, but, as with the Notice to Tipped Employees, their contents were provided via testimony, and were offered for the non-hearsay purpose of establishing that the servers received notice of the minimum wage requirements.

| | |
|---|---|
| Edwin Alvarez | $21,079.75 |
| Sandra Calvillo | $24,463.44 |
| Roberto Gonzalez | $25,424.21 |
| Esmirna Samayoa | $6,813.54 |
| Arturo Betancourt | $18,958.38 |
| Nelson Gonzalez | $17,598.86 |
| Andrea Hernandez | $9,859.06 |

Further, as to the relevant allegations charged after the Agreed-Upon Period, judgment is entered in Plaintiff's favor as to the record-keeping violation claims. Accordingly, this Court will issue an injunction, pursuant to 29 U.S.C. § 217, requiring Defendants to comply with said record-keeping requirements and to refrain from future record-keeping violations.

Finally, judgment is entered in Defendants' favor as to Plaintiff's remaining claims for alleged violations of the minimum wage and overtime provisions of the FLSA after April 25, 2013.

An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUINONES ALEJANDRO* USDC, J.